UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMEGY BANK OF TEXAS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. 3:20-cv-00375-N |
| CGI FRANCHISE SYSTEMS, INC.; | § | |
| ROGER MACDONELL; and | § | |
| SHARON MACDONELL, | § | |
| | § | |
| *Defendants.* | § | |

DEFENDANT SHARON MACDONELL'S BRIEF IN SUPPORT
OF HER RESPONSE TO DEFENDANTS ROGER MACDONELL AND CGIFSI'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

**KELLI M. HINSON**
  Texas State Bar No. 00793956
  Email:  khinson@ccsb.com
**SVEN STRICKER**
  Texas State Bar No. 24110418
  Email:  sstricker@ccsb.com
**CARRINGTON, COLEMAN, SLOMAN**
  **& BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202-3767
214/855-3000 (phone)
214/580-2641 (fax)

*Attorneys for Defendant*
*Sharon MacDonell*

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ........................................................................................................ 1

RESPONSE TO ROGER AND CGIFSI'S ALLEGED
FACTS  AND ASSERTION OF ADDITIONAL UNDISPUTED FACTS ...................... 2

    A.    The Parties' Marriage and Divorce ................................................. 2

    B.    Ownership of CGIFSI ....................................................................... 3

    C.    Roger's Obstruction and the Prior State Court Action ................... 4

    D.    Subsequent Events ........................................................................... 6

    E.    Present Action .................................................................................. 8

ARGUMENTS AND AUTHORITIES ......................................................................... 8

    A.    Nature of Interpleader Action ......................................................... 8

    B.    Roger and CGIFSI's Burden Is a Heavy One ................................. 9

    C.    Roger Does Not Have the Right to Deplete the Value
          and Assets of CGIFSI, Which is Community Property. ................... 9

          1.    Giving Roger the Disputed Funds would frustrate
               the distribution of assets in the French divorce proceeding. ................. 10

          2.    The "legal owner" of the account is not
               necessarily the "true owner." ................................................. 12

    D.    Res Judicata Does Not Bar Sharon's Claim to the Disputed Funds. ............... 14

          1.    The state court summary judgment was not a
               "judgment on the merits." ...................................................... 15

          2.    The state court was not a "court of competent jurisdiction." ............... 16

          3.    Res judicata does not apply when subsequent
               events change the legal rights of the parties. ........................................ 18

    E.    Roger Cannot Usurp the Value of CGIFSI,
          Which Is Community Property. ....................................................... 20

CONCLUSION AND PRAYER .................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Lab. v. Gravis*,
470 S.W.2d 639 (Tex.1971) ................................................17

*In re ATOM Instrument Corp.*,
478 B.R. 252 (Bankr. S.D. Tex. 2012) ................................18, 19

*Bank One, Tex. N.A. v. Prudential Co. Of Am.*,
878 F. Supp. 943 (N.D. Tex. 1995) ....................................9

*Barber v. Unionbank (In re Johnson)*,
232 B.R. 735 (Bankr. C.D. Ill. 1999)..................................12

*Buzbee v. Clear Channel Outdoor, LLC*,
616 S.W.3d 14 (Tex. App.—Houston [14th Dist.] 2020, no pet.)...........17

*Carolina Cas. Ins. Co. v. Sowell*,
603 F.Supp.2d 914 (N.D. Tex. 2009). ..................................9

*d'Elia v. d'Elia*,
58 Cal. App. 4th 415 (1997) ............................................3

*Dearborn Life Ins. Co. v. Curtis*,
No. 1:20-CV-316-RP, 2020 WL 6875274 (W.D. Tex. Nov. 9, 2020) ..........8

*Engelman Irrigation Dist. v. Shields Bros., Inc.*,
514 S.W.3d 746 (Tex. 2017)..............................................17

*In re Estate of Muhammad*,
165 Ill.App.3d 890, 117 Ill. Dec. 444, 520 N.E.2d 795 (1987) .............12

*First Nat. Bank of Ft. Worth v. United States*,
633 F.2d 1168 (5th Cir. 1981) ..........................................8, 9

*Friends of Lydia Ann Channel v. Lydia Ann Channel Moorings, LLC*,
No. 2:19-CV-00148, 2020 WL 1434706 (S.D. Tex. Mar. 24, 2020) ...........16

*Fuhrmann v. C & J Gray Invs. Partners, Ltd.*,
No. 05-15-01387-CV, 2016 WL 7217252
(Tex. App.—Dallas Dec. 13, 2016, pet. denied)..........................16

*HSBC Bank USA, N.A. v. Watson*,
377 S.W.3d 766 (Tex. App.—Dallas 2012, pet. dism'd)....................5

*In re: IFS Fin. Corp.*,
    417 B.R. 419 (Bankr. S.D. Tex. 2009) ...................................................................12

*In re IFS Fin. Corp.*,
    669 F.3d 255 (5th Cir. 2012) .......................................................................................13

*Igal v. Brightstar Info. Tech. Grp., Inc.*,
    250 S.W.3d 78 (Tex. 2008).........................................................................................17

*Jackson v. Smith*,
    703 S.W.2d 791 (Tex. App.—Dallas 1985, no writ) .............................................11

*Marino v. State Farm Fire & Casualty Insurance Company*,
    787 S.W.2d 948 (Tex.1990)...............................................................................18, 19

*In re: Marriage of Benson*,
    36 Cal. 4th 1096 (Cal. 2005)............................................................................13, 21

*In re: Marriage of McTiernan & Dubrow*,
    133 Cal. App. 4th 1090 (Cal. App. 2005) .................................................................11

*Nilsen v. City of Moss Point, Mississippi*,
    674 F.2d 379 (5th Cir. 1982) .....................................................................................20

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*,
    83 F. Supp. 2d 781 (E.D. Tex. 2000) ....................................................15, 17, 18

*Primerica Life Ins. Co. v. Purselley*,
    No. 3:16-CV-0455-D, 2017 WL 3780274 (N.D. Tex. Aug. 31, 2017) ....................9

*Rhoades v. Casey*
    196 F.3d 592, 600 (5th Cir. 1999) ..............................................................................9

*Trammell Crow Residential Co. v. Am. Prot. Ins. Co.*,
    No. 3:10-CV-2163-B, 2012 WL 4364616 (N.D. Tex. Sept. 25, 2012) ...................19

*TRO-X, L.P. v. Eagle Oil & Gas Co.*,
    608 S.W.3d 1 (Tex. App.—Dallas 2018), *aff'd*, 619 S.W.3d 699 (Tex. 2021) ................18, 19

*In re Ulz*,
    388 B.R. 865 (Bankr. N.D. Ill. 2008) .......................................................................12

*Zieba v. Martin*,
    928 S.W.2d 782 (Tex. App.—Houston [14th Dist.] 1996, no writ) ........................11

**Statutes**

Cal. Fam. Code § 233(a), § 2040(a) .............................................................10

Cal. Fam. Code §§ 721(b), 1100(e), 2102 ....................................................10

Cal. Fam. Code § 751 ...............................................................................13, 21

Cal. Fam. Code § 1100(b) .............................................................................10

Cal. Fam. Code § 2040(a)(2) .........................................................................11

Cal. Fam. Code § 2100(a) ..............................................................................10

Cal. Fam. Code §§ 2100(c), 2102-2017 ........................................................10

Cal. Fam. Code § 2102(a) ..............................................................................10

Cal. Fam. Code § 2601 ..................................................................................13

**Other Authorities**

Federal Rule of Civil Procedure 22 ...............................................................18

TO THE HONORABLE COURT:

Roger MacDonell ("Roger") and CGI Franchise Systems, Inc. ("CGIFSI") have not established their right to summary judgment regarding the funds interpleaded by Amegy Bank in this matter (the "Disputed Funds"). As discussed in detail below, this Court has broad discretionary powers in an interpleader action and should exercise those powers to maintain control of the Disputed Funds so that Roger cannot frustrate the division of property by the French Divorce Court by stripping CGIFSI of its assets and value and transferring $2.4 million of community property to an offshore bank account.

## INTRODUCTION

Roger and CGIFSI have failed to meet the "heavy burden" to prove their entitlement to the Disputed Funds "beyond peradventure," and their motion for summary judgment should, therefore, be denied.

Although CGIFSI is the legal owner of the account, that does not answer the fact-intensive questions of who the "true owner" is and whether Roger has the authority as a matter of law to divert the Disputed Funds to his offshore bank account while the parties' property division is ongoing in the French Divorce Court. It is clear that, if allowed to do so, Roger will strip the company of its value and hide the funds. CGIFSI is not an operating entity that needs the funds to operate. Instead, as alleged in the Amegy Complaint and admitted in Roger's Answer, this interpleader action was initiated after Roger requested Amegy Bank to "wire the funds in the CGI Account *to him in Monaco*." (Dkt. No. 1, ¶13; Dkt. No. 8, ¶ 13). The French Divorce Court has held that the value of CGIFSI is community property, and this Court should not allow Roger to convert that value to himself by transferring $2.4 million in assets to his personal bank account, out of Sharon's reach.

Sharon's claim to the Disputed Funds is not barred by res judicata for numerous reasons, which will become obvious when the Court considers the timing and procedural background of the prior State Court Action. First, the basis for Roger and CGIFSI's state court summary judgment motion was that it was up to the French Divorce Court, and not the state court, to determine whether CGIFSI was community property. Shortly after summary judgment was entered in the State Court Action, the French Divorce Court made that determination, concluding that the value of CGIFSI was indeed community property. Res judicata does not now protect Roger from the effect of that decision in this interpleader. Moreover, Roger and CGIFSI's argument in the State Court Action (apparently adopted by the state court) was that there was no justiciable controversy between the parties, which would deprive the state court of subject matter jurisdiction. Dismissals based on lack of subject matter jurisdiction are not subject to res judicata.

**RESPONSE TO ROGER AND CGIFSI'S ALLEGED FACTS
AND ASSERTION OF ADDITIONAL UNDISPUTED FACTS**

**A.     The Parties' Marriage and Divorce**

1.      Sharon does not dispute that she and Roger were married in California in 1992, and moved their family to France in 2006. (Dkt. 14, ¶ 9). Roger alleges that Sharon filed for divorce in the French Divorce Court, citing R.APP_111, which Sharon disputes. Sharon filed for divorce in California in 2010, which action was ultimately dismissed. (Dkt. 14-1, R.APP_53,[1] R.APP_111, ¶ 24). Roger filed for divorce in France on September 24, 2010. (Dkt. 14-1, R.APP_53; Exh. 1, S.APP_3, ¶ 4). Sharon does not dispute that protracted divorce

---

[1]    References to the Appendix submitted by Roger and CGIFSI will be indicated by R.APP_**, and references to Sharon's Appendix, submitted with this Response, will be indicated by S.APP_**.

proceedings ensued or that the French Divorce Court officially terminated Roger and Sharon's marriage in 2014. (Dkt. 14, ¶ 9). She does not dispute that the process of identifying and dividing the assets comprising Roger and Sharon's community estate continued for several years (*Id.*), but as discussed below, she does dispute any implication that that process is complete.

### B.    Ownership of CGIFSI

2.    Sharon does not dispute that CGIFSI is the legal owner of the Account. (Dkt. 14, ¶ 1). But as discussed below, that does not resolve the legal questions of who the true owner of the Disputed Funds is or Roger's ability to divert the Disputed Funds for his own benefit in breach of his fiduciary duties to Sharon.

3.    Sharon does not dispute that, at one time, Roger and David Kiger were the owners of CGIFSI or that Roger is now the sole record shareholder and sole member of the board of CGIFSI. (Dkt. 14, ¶ 2). Before Kiger sold his shares to Roger, however, on or about August 31, 2010, CGIFSI stopped paying Roger distributions based on Roger's percentage share ownership of CGIFSI despite the fact that CGIFSI continued to pay Kiger distributions based on Kiger's percentage ownership. (Exh. 1, S.APP_3, ¶ 5; Exh. 1-A, S.APP_7-8). Between August 31, 2010 and September 14, 2017, CGIFSI held distributions owed to Roger in CGIFSI's account with Amegy Bank in the amount of $4,879,893.86. *Id.* Roger did not disclose the fact that this amount was being held in the CGIFSI account at Amegy Bank and was owed to him either to Sharon or to the Court in the French Divorce Case. *Id.*

4.    Sharon does not dispute that Roger has created documents, including board resolutions and written consents, purporting to authorize himself to act on behalf of CGIFSI as set forth in those documents. (Dkt. 14, ¶3). But Sharon disputes Roger has the legal ability

or right to transfer the Disputed Funds—essentially the entire value of CGIFSI—to an offshore account and out of Sharon's reach, when the French Divorce Court has ruled that the value of CGIFSI is community property. (Dkt. 14-1, Exh. A-5, R.APP_57, R.APP_71).

5.     CGIFSI is not an operating entity. (Exh. 2, S.APP_24, ¶ 11). It is merely a shell, a holding account for distributions and royalties for Roger and his former partner, David Kiger. (*Id.*)  It has no rent, no utilities, and no payroll. (*Id.*). Therefore, there are no legitimate business needs to transfer the $2.4 million currently in the CGIFSI account. (*Id.*).

### C.     Roger's Obstruction and the Prior State Court Action

6.     Sharon does not dispute that she previously brought claims against CGIFSI, Roger, and other parties in the case styled *Sharon MacDonell v. CGI Franchise Systems, Inc. et al.* (the "State Court Action"). (Dkt. 14, ¶ 8). Sharon also does not dispute that, at the time of the State Court Action, the French Divorce Court was in the process of assessing the character of certain of Roger's business interests, bank accounts, and Trusts, including CGIFSI, and that that process was ongoing at the time of the State Court Action. (Dkt. 14, ¶10). Sharon also does not dispute that she has continually maintained that she has a community interest in CGIFSI and its assets, including the Disputed Funds. (*Id.*).

7.     Sharon does not dispute that she has continued to maintain that Roger has utilized CGIFSI and the Account to conceal funds from Sharon and the French Divorce Court, but would characterize those allegations as factual rather than "elaborate" as described by Roger. (Dkt. 14, ¶11-13).

8.     During the past 11 years of the MacDonell divorce proceedings, Roger has changed attorneys seven times and postponed numerous hearings without justifiable cause. (Exh. 2, S.APP_21, ¶ 3). His continuous non-cooperation in the case has led this divorce to

drag on unnecessarily for 11 years and has made it difficult to identify and preserve community assets. (*Id*.).  In addition, Roger's opaque and stubborn behavior and attempts to hide money or transfer money out of Sharon's reach have been noted by various judges during the procedure. (*Id*. at S.APP_21, ¶ 4; Exh. 2-A through 2-E, S.APP_30--S.APP_119). To date, Roger has never given his true personal financial picture, nor the financial picture of the MacDonell community estate despite multiple requests, demands, and finally court injunctions. (Exh. 2, S.APP_22, ¶ 5).

9.      Throughout the divorce and property division process, Roger has engaged in a pattern of behavior designed to hide money from Sharon and the French Divorce Court. As just one example, Roger sold Shipping Solutions, LP in August of 2019.  (Exh. 1, S.APP_4, ¶ 7). The French Divorce Court has ruled that Shipping Solutions LP is community property. (Dkt. 14-1, Exh. A-5, R.APP_71). On August 5, 2019, SHIPPING LOGISTICS, LLC wired Shipping Solutions, LP the sale proceeds of over $10 million. (Exh. 1, S.APP_4, ¶ 7; Exh. 1-B, S.APP_10-11). The next day, August 6, 2019, Roger wired the bulk of these proceeds to himself personally in Monaco at CFM Indosuez Wealth Bank. (*Id*.).  The MacDonells' companies have no business in Monaco and there is no reason for Roger to move these monies offshore except to put them out of Sharon's reach. (Exh. 1, S.APP_4, ¶ 7). Roger agreed before the sale to hold 50% of the proceeds of the sale pending resolution of the community estate. (*Id*.). But to date, he still refuses to tell Sharon where he has put this money. (*Id*.; Exh. 1-C, S.APP_13).

10.      Sharon was forced to initiate Federal Subpoenas to banks in order to obtain wire information to try to trace the money that should belong in the community estate. (Exh. 2, S.APP_23, ¶ 7). Based on her and her French attorney's investigation, they believe Roger has

siphoned/secreted $35 million from the community estate. (*Id*.). He continues to refuse to disclose the whereabouts of those monies, despite repeated requests. (*Id*.).

11.     Sharon does not dispute she sought relief in the State Court Action related to her rights to the value of CGIFSI, including the Account, as detailed in her Sixth Amended Petition. (Dkt. 14, ¶14).

12.     Sharon does not dispute that Roger and CGIFSI filed a Motion for Summary Judgment in the State Court Action, which was granted by the Court. (Dkt. 14, ¶15-16). The basis for the summary judgment motion was Roger's argument that Sharon's right to the disputed assets (including CGIFSI and the Account) must be "determined by the French divorce court through its division of the community estate." (Dkt. 14-1, Exh. B-4, R.APP_139). Roger argued that the "assets comprising Roger and Sharon's community estate, and how it is to be divided among them, has not yet been decided" and that Sharon's claims should be asserted in the French Divorce Court "for its determination of what is community property and what is not." (*Id*. at R.APP_145).

### D.     Subsequent Events

13.     Sharon does not dispute that, in January 2020, ***after*** Judge Parker granted summary judgment in the State Court Action, the French Divorce Court issued the French Judgment, in which Roger was declared the "unsuccessful party" and ordered to pay all costs (the "French Judgment"). (*See*, Dkt. 14-1, Exhs. A-4 and A-5, R.APP_30-R.APP_73). The French Judgement makes several rulings in Sharon's favor, including that the value of CGIFSI is a community asset. (Dkt. 14, ¶ 17; Dkt. 14-1, Exh. A-5, R.APP_52-R.APP_73). The French Divorce Court also held that California law would apply to the division of their community assets. (*Id*. at R.APP_55). And pursuant to California law, the French Divorce Court held "the

value of CGIFSI is common property." (*Id*. at R.APP_57, R.APP_58, and R.APP_71). The value of the assets, including CGIFSI, will be determined at the time of the final property division. (*Id*. at R.APP_59 and R.APP_61).

14.     To that end, because accounting operations remained to be carried out, the French Divorce Court appointed a "Notaire" or "notary" (essentially a forensic accountant) to complete the division of property. (*Id*. at R.APP_71). The Notaire was to complete his investigation within one year (or by January 2021) and prepare a "liquidation statement that establishes the accounts between the co-sharers, the divisible estate, the rights of the parties, and the composition of the lots to be divided." (*Id*. at R.APP_73).

15.     Not surprisingly, Roger has refused to cooperate in this process and has refused to disclose his assets to the Notaire, as explained in greater detail in the Declaration of Jerome Boursican, Sharon's French attorney. (Exh. 2, S.APP_24, ¶ 12-29). Ultimately, the Notaire informed Mr. Boursican on December 7, 2020 that he would contact the French judge to inform her again of Roger's obstruction of justice. (*Id*. at ¶ 28). On February 11, 2021, the French judge issued an injunction against Roger assessing daily monetary fines for not producing the necessary documents. (*Id*. at ¶ 29; Exh. 2-H and 2-I, S.APP_126—S.APP_133).

16.     Because Roger has refused to cooperate in the French division of property, the Notaire will produce an Act of Liquidation based solely on the documents that Sharon has provided, and a monetary decision will be issued. (Exh. 2, ¶ 29, S.APP_27). Sharon and her French attorney anticipate that process will be completed in the next 6-9 months. (*Id*.).

17.     Sharon does not dispute that Judge Parker did not rule on Sharon's motion for new trial requesting that the court consider the newly developed evidence of the French Judgment. (Dkt. 14, ¶ 18, 19). Sharon also does not dispute that she filed a Notice of Appeal

regarding the summary judgment rulings or that she later dismissed that appeal. (Dkt. 14, ¶20-22).

### E.    Present Action

18.    Sharon does not dispute that, in February 2020, Roger requested that Amegy Bank wire the disputed funds into another account or that Amegy refused to do so. (Dkt. 14, ¶ 4). More specifically, it is undisputed that Roger requested Amegy Bank to "wire the funds in the CGI Account *to him in Monaco*." (Dkt. No. 1, ¶13; Dkt. No. 8, ¶ 13). Any suggestion that Roger was moving the money to Monaco to facilitate the division of property in the French Court is belied by the fact that Roger failed to disclose the millions of dollars in this Account to the French Divorce Court. (Exh. 1, S.APP_4, ¶ 5).

19.    Sharon does not dispute that she and her counsel have sent letters to Amegy Bank asserting her rights to the Disputed Funds or that she requested that Amegy Bank protect the Disputed Funds from Roger's attempt to secrete them offshore by depositing the funds into the registry of the Court so that the Court can determine how such funds should be distributed. (Dkt. 14, ¶5, 6; Dkt. 1-3; Dkt. 1-4).

20.    Sharon does not dispute that Amegy Bank responded by filing this Interpleader Action. (Dkt. 14, ¶ 7). Sharon does not dispute that the interpleader is proper. (Dkt. 14, p. 12-13).

### ARGUMENTS AND AUTHORITIES

### A.    Nature of Interpleader Action

Interpleader actions are equitable in nature. *First Nat. Bank of Ft. Worth v. United States*, 633 F.2d 1168, 1172 (5th Cir. 1981). Moreover, courts possess broad discretion in interpleader actions. *Dearborn Life Ins. Co. v. Curtis*, No. 1:20-CV-316-RP, 2020 WL

6875274, at *5 (W.D. Tex. Nov. 9, 2020), report and recommendation adopted, No. 1:20-CV-316-RP, 2020 WL 9216374 (W.D. Tex. Dec. 4, 2020) (citing *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999)). *First Nat. Bank of Ft. Worth*, for example, involved a dispute over which party was entitled to the monies from a tax refund. The court noted that, under the Tax Code, a refund would simply go to the party making the overpayment, without regard for who had the greater liability for the tax. 633 F.2d at 1172. However, because the case before it was an interpleader, the court could consider the equities, and "[e]quity requires that the question of which estate is primarily liable for the tax be determined." *Id.*

Similarly in this case, the Court should consider who, in fairness and equity, is entitled to the Disputed Funds, which is difficult if not impossible to resolve on summary judgment.

**B.      Roger and CGIFSI's Burden Is a Heavy One.**

In an interpleader action, each claimant must prove his or her right to the fund by a preponderance of evidence. *Primerica Life Ins. Co. v. Purselley*, No. 3:16-CV-0455-D, 2017 WL 3780274, at *2 (N.D. Tex. Aug. 31, 2017) (citing *Rhoades*, 196 F.3d at 600). To be entitled to summary judgment on a claim for which the movant will have the burden of proof, the moving party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Id.* (citing *Bank One, Tex. N.A. v. Prudential Co. Of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995)). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Id.* (quoting *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009)).

**C.      Roger Does Not Have the Right to Deplete the Value and Assets of CGIFSI, Which is Community Property.**

Roger's first argument is that, because CGIFSI is the record owner of the Disputed Funds, and he is the President of CGIFSI, he is entitled to do whatever he wants with the

Funds, apparently including secreting them to an offshore account out of the reach of Sharon or the French Divorce Court. This is contrary to California law, which the French Divorce Court held was applicable to the division of the parties' marital estate. (Dkt. 14, Exh. A-5, R.APP_55).

### 1.   Giving Roger the Disputed Funds would frustrate the distribution of assets in the French divorce proceeding.

Under California law, marriage creates a fiduciary relationship between the spouses. Cal. Fam. Code §§ 721(b), 1100(e), 2102. A spouse may not make a gift of community personal property, or dispose of community personal property for less than fair and reasonable value, without the written consent of the other spouse. Cal. Fam. Code § 1100(b). The spouses' fiduciary duties continue throughout the divorce proceedings. Cal. Fam. Code §§ 2100(c), 2102-2017. "From the date of separation to the date of the distribution of the community or quasi-community asset or liability in question, each party is subject to the standards provided in Section 721, as to all activities that affect the assets and liabilities of the other party" including but not limited to "operation or management of a business or an interest in a business in which the community may have an interest." Cal. Fam. Code § 2102(a).

It is the policy of the State of California "to marshal, preserve, and protect community and quasi-community assets and liabilities that exist at the date of separation so as to avoid dissipation of the community estate before distribution." Cal. Fam. Code § 2100(a). In furtherance of that policy, California divorce courts automatically enter four temporary restraining orders in every divorce proceeding. Cal. Fam. Code § 233(a), § 2040(a). Among other things, those orders prohibit the parties from:

> [T]ransferring, encumbering, hypothecating, concealing, or in any way disposing of any property, real or personal, whether community, quasicommunity, or separate,

without the written consent of the other party or an order of the court, except in the usual course of business or for the necessities of life.

Cal. Fam. Code § 2040(a)(2); *see also, In re: Marriage of McTiernan & Dubrow*, 133 Cal. App. 4th 1090, 1102-1103 (Cal. App. 2005). Similarly in Texas, a "presumption of constructive fraud arises where one spouse disposes of the other spouse's one-half interest in community property without the other's knowledge or consent." *Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex. App.—Houston [14th Dist.] 1996, no writ) (citing *Jackson v. Smith*, 703 S.W.2d 791, 795 (Tex. App.—Dallas 1985, no writ)).

As detailed above in the Undisputed Facts, since the divorce proceedings began, Roger has engaged in a pattern of behavior designed to liquidate and hide assets before the French Divorce Court can complete the distribution of assets. (See, ¶¶ 3, 8-10, 15-16 above). His behavior has been so egregious that the French court has imposed a daily monetary fine for his failure to produce documents. (Exh. 2, S.APP_27, ¶ 29). It appears Roger is stonewalling the French process to buy time to stockpile as much cash as he can and send it offshore, out of Sharon's reach. (S.APP_22-23, ¶ 6). Unfortunately, the French court has no jurisdiction over monies/assets outside of France. (*Id.* at S.APP_23, ¶ 8). So, the French court can declare CGIFSI as community property, but it has no jurisdiction to freeze or otherwise secure the monies. (*Id.*).

Roger is essentially asking this Court to allow him to dispose of CGIFSI's assets, which would constitute a breach of his fiduciary duty and constructive fraud. Equity should not permit such a result.

2.      The "legal owner" of the account is not necessarily the "true owner."

Roger does not cite any authority to support, much less prove "beyond peradventure," that his status as shareholder and President of CGIFSI gives him the legal right to frustrate the division of property underway in the French Divorce Court or the French Divorce Court's determination that the value of CGIFSI is community property.

Instead, Roger relies on *In re: IFS Fin. Corp.*, 417 B.R. 419, 435 (Bankr. S.D. Tex. 2009), to argue that "CGIFSI is indisputedly the owner of the Account and the funds therein." But that case stands for the proposition that the true ownership of a bank account *is not* necessarily determined by the name on the account. As stated by Roger, the court held in *In re: IFS Fin. Corp*. that Integra Bank was the "legal owner" of a bank account because the bank account was in its name. *Id*. at 435. But it then went on to hold that "the legal title owner is not always the true owner" and that, in that case, IFS Financial Corp "was the true owner" of the bank account at issue because it exercised control over the funds. *Id*. (citing *In re Ulz*, 388 B.R. 865, 868 (Bankr. N.D. Ill. 2008) ("A person may have an interest in property—and may even be considered the owner—although someone else has title."); *Barber v. Unionbank (In re Johnson)*, 232 B.R. 735, 739 (Bankr. C.D. Ill. 1999) (holding that "the contract between the bank and the depositor" is not determinative as to the true owner of an account); *In re Estate of Muhammad*, 165 Ill.App.3d 890, 117 Ill. Dec. 444, 520 N.E.2d 795, 797 (1987) (holding that "true ownership of a deposit may be proved to be in another than the person in whose name it is made, and courts may use their equitable powers to determine the beneficial or equitable owner of an account")).

*In re: IFS Fin. Corp* does not support Roger and CGIFSI's request for summary judgment in this case. To the contrary, it demonstrates that determining the "true owner" or

"beneficial owner" of an account can be a fact-intensive inquiry. For example, the court in that case determined that the "legal owner" of the bank account was not the "true owner" of the account and that the "true owner" had utilized the account to make fraudulent transfers only after significant discovery, over a week of trial, and post-trial briefing. *Id*. at 432. The court certainly did not grant summary judgment based only on the company identified as the legal owner of the account as Roger requests here.

The Fifth Circuit affirmed the Bankruptcy Court's ruling that the legal account owner was not the "true owner" of the funds, reasoning that "IFS should not be able to evade full discharge of debts in this bankruptcy through an intentionally obscure organizational structure." *In re IFS Fin. Corp*., 669 F.3d 255, 262 (5th Cir. 2012). It noted that, "[t]o ascertain ownership, Texas law directs courts to look not to the legal relationship between parties; rather, courts are to examine ***the individual facts of each case***." *Id.* (true ownership is "ultimately a fact-based inquiry that will vary according to the peculiar circumstances of each case"). In the bankruptcy context, actual control over the funds is typically the primary consideration in determining true ownership. *Id*. But in this case, California community property law dictates that "[e]ach spouse owns one-half interest in all community property." *In re: Marriage of Benson*, 36 Cal. 4th 1096 (Cal. 2005) (citing Cal. Fam. Code §751). When stock is community property, each spouse has an equal interest in it, regardless of who is the holder of record. *d'Elia v. d'Elia*, 58 Cal. App. 4th 415, 423 (1997), as modified on denial of reh'g (Nov. 14, 1997). Therefore, Sharon is the "true owner" of at least half of the Disputed Funds.[2]

---

[2]   Although it is not the subject of the present motion, it is Sharon's position that she is entitled to all of the Disputed Funds as a result of Roger's usurpation of other community assets. California Family Code section 2601 provides: "Where economic circumstances warrant, the court may award an asset of the community estate to one party on such conditions as the court deems proper to effect a substantially equal division of the community estate."

Roger also argues that he alone has authority to dictate distribution of the funds in the Account because he gave himself authorization and also ratified and confirmed all actions he had previously taken on behalf of CGIFSI. (Dkt. 14, p. 14). As an initial matter, it is not at all clear that the resolutions Roger signed even purport to give him the authority to transfer substantially all of the assets of CGIFSI to himself via an offshore bank account. The consent documents Roger relies on (1) accept the resignation of Kiger; (2) confirm that Roger is appointed as the sole director, President, and Secretary of CGIFSI; and (3) authorize him to do all such things, pay all such costs and expenses, and execute and deliver instruments and documents as may "be deemed to be desirable or necessary in order to *carry out and comply with the purposes and intent of the foregoing resolutions*." (Dkt. 14-1, R.APP_21, R.APP_26, emphasis added). The consent documents do not purport to authorize Roger to transfer substantially all of CGIFSI's assets to an offshore account and, thereby, completely deplete its value for the purpose of putting assets out of Sharon's reach.

Even if the resolutions did purport to give Roger this authority, however, he still cannot unilaterally authorize himself to dissipate community assets without Sharon's consent, as discussed above.

**D.     Res Judicata Does Not Bar Sharon's Claim to the Disputed Funds.**

Roger's res judicata argument is circular and completely without merit: He won in the State Court Action by arguing that the community nature of CGIFSI should be determined by the French Divorce Court; but now that the French Divorce Court has ruled against him on that issue, he argues that enforcement of that Judgment in this Court is barred by res judicata. The application of res judicata in such a context fails for numerous reasons, any one of which would be sufficient to defeat summary judgment in this case.

1.      **The state court summary judgment was not a "judgment on the merits."**

To establish the affirmative defense of res judicata under Texas law, Roger must prove "(1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of the parties or those in privity with them, and (3) a second action based on the same claims as were raised or should have been raised in the first action." (Dkt. 14, at p. 15, citing *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 787 (E.D. Tex. 2000)). As acknowledged by Roger, a judgment is "on the merits" only "if it is a decision as to the parties' rights and liabilities ***based on the ultimate facts disclosed*** by the pleadings, evidence, or both, and upon which the right of recovery depends." *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 771 (Tex. App.—Dallas 2012, pet. dism'd).

The state court summary judgment was not based on "the ultimate facts disclosed," but rather, was based on Roger's argument (apparently accepted by the state court) that Sharon could not bring an action in state court for damage to the community estate because such claims "must be resolved by the divorce court." (Dkt. 14-1, Exh. B-4, R.APP_135; *see also*, R.APP_139: "this characterization and division of assets is already being considered and adjudicated by the French divorce court."). Roger did not argue, and the state court did not find, that Sharon's claims failed on their facts. Instead, Roger's motion was based on his argument that the claims Sharon brought "do not exist as a matter of Texas law." (*Id.* at R.APP_140; *see also*, R.APP_142: "even if a jury were to find that the defendant spouse defrauded the community estate by committing breach of fiduciary duty, fraudulent transfer, conversion, or conspiracy, 'no judgment [could be] entered against him on that basis for a very straightforward reason: such torts do not exists.'"). Roger argued the state court should dismiss

Sharon's claims because "such claims belong in the French divorce court for its determination of what is community property and what is not." (*Id.* at R.APP_145).

After the state court granted summary judgment in the State Court Action, the French Divorce Court issued the French Judgment, in which Roger was declared the "unsuccessful party" and ordered to pay all costs (the "French Judgment"). (*See*, Dkt. 14-1, Exh. A-5, R.APP_71). The French Judgement makes several rulings in Sharon's favor, including that the value of CGIFSI is a community asset. (Dkt. 14, ¶ 17; Dkt. 14-1, Exh. A-5, at R.APP_57, R.APP_58, R.APP_71, holding "the value of CGIFSI is common property.").

Having successfully convinced the state court to defer to the French Divorce Court's determination of "what is community property and what is not," Roger cannot now escape the effect of the French Court's judgment in this case by arguing res judicata.

### 2.     The state court was not a "court of competent jurisdiction."

Res judicata also does not apply because the state court was not a "court of competent jurisdiction" for res judicata purposes for two reasons.

First, though not stated in these terms, the basis of Roger's summary judgment motion in the State Court Action was essentially that the state court lacked jurisdiction to rule on the community nature of the property at issue because that issue was pending in the French Divorce Court. Roger argued in the state court that "[b]ecause Sharon's causes of action against Roger and CGIFSI do not exist, however, none of these issues present a justiciable controversy that may be resolved by this Court." (Dkt. 14-1, Exh. B-4, R.APP_146).

If no justiciable controversy existed between Sharon and Roger in the State Court Action, as Roger argued and as the court apparently found, then the state court lacked subject matter jurisdiction. *See, e.g., Fuhrmann v. C & J Gray Invs. Partners, Ltd*., No. 05-15-01387-

CV, 2016 WL 7217252, at *5 (Tex. App.—Dallas Dec. 13, 2016, pet. denied) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Res judicata does not apply when the initial tribunal lacked subject matter jurisdiction over the claim. *Igal v. Brightstar Info. Tech. Grp., Inc.*, 250 S.W.3d 78, 82 (Tex. 2008). Accordingly, a dismissal based on lack of a controversy between the parties "is, per force, not one 'on the merits.'" *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 21 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 750 (Tex. 2017)).

Second, the State Court Action cannot have res judicata effect over this action because the state court did not and could not have acquired jurisdiction over the current federal interpleader action. The Texas Supreme Court has articulated state res judicata law as follows: "[A]n existing final judgment rendered upon the merits by a court of competent jurisdiction **upon a matter within its jurisdiction** is conclusive of the rights of the parties in all other actions on the points at issue and adjudicated in the first suit." *Piggly Wiggly Clarksville, Inc.*, 83 F. Supp. 2d at 787 (citing *Abbott Lab. v. Gravis*, 470 S.W.2d 639, 642 (Tex.1971) (emphasis in original)). By definition, the phrase "upon a matter within its jurisdiction" necessarily implicates the jurisdictional competency of the court rendering the first judgment. *Id*. "Further, the rule of res judicata in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried." *Id*. Common sense would suggest that a claim over which a court lacks subject matter jurisdiction would not qualify as one that "might have been tried" by that court. *Id*. Accordingly, if the state court would not have had jurisdiction over the current interpleader suit, res judicata does not apply.

In *Piggly Wiggly*, for example, the defendant argued that res judicata barred plaintiffs' federal antitrust lawsuit because the claim litigated between the same parties in a prior state court case was "fundamentally identical" to the issue Piggly Wiggly brought in federal court, the only difference being that the prior case involved alleged "violations of state antitrust law whereas this case asserts violations of parallel provisions of federal antitrust law." *Id.* The court disagreed, noting that state court litigation does not bar subsequent litigation based on a federal statute if the state court lacked jurisdiction over the federal statutory claim, even if the two cases are based on the same facts. *Id.* at 792. Here, Amegy Bank's interpleader action is based on Federal Rule of Civil Procedure 22 and/or the Federal Interpleader Act, 33 U.S.C. §1335. The state court would not have had jurisdiction over such a claim, and so res judicata cannot apply.

### 3. Res judicata does not apply when subsequent events change the legal rights of the parties.

In addition or in the alternative, even if the elements of res judicata were otherwise met, a judgment in one suit will not operate as res judicata to a subsequent suit on the same question between the same parties if, in the interval, facts have changed or new facts have arisen that may alter the legal rights of the parties. *In re ATOM Instrument Corp.*, 478 B.R. 252, 260 (Bankr. S.D. Tex. 2012) (citing *Marino v. State Farm Fire & Casualty Insurance Company*, 787 S.W.2d 948, 949–950 (Tex.1990)); *see also*, *TRO-X, L.P. v. Eagle Oil & Gas Co.*, 608 S.W.3d 1, 12 (Tex. App.—Dallas 2018), *aff'd*, 619 S.W.3d 699 (Tex. 2021).

Sharon's claim to the Disputed Funds in this case is based on the finding in the French Judgment that the value of CGIFSI is community property. Sharon could not have brought any claims in the State Court Action based on the effect of the French Judgment because the French

Judgment had not yet been entered and so any such claim would not have been ripe at the time the state court claims were filed. *Trammell Crow Residential Co. v. Am. Prot. Ins. Co*., No. 3:10-CV-2163-B, 2012 WL 4364616, at *10 n.5 (N.D. Tex. Sept. 25, 2012)(finding Trammell Crow's res judicata argument was "easily dismissed" because the "claims against Trammell Crow would not have been ripe during the Insurance Action and thus could not have been brought at that time"). The whole point of Roger's state court summary judgment was that the community nature of CGIFSI "ha[d] not yet been decided." (Dkt. 14-1, Exh. B-4, R.APP_137). That issue has now been decided, which "may alter the legal rights of the parties," and res judicata is, therefore, inapplicable. *In re ATOM Instrument Corp*., 478 B.R. at 260.

"For res judicata to apply, a claim must be in existence at the time suit is filed, and cannot merely be a prospective anticipated claim." *TRO-X, L.P. v. Eagle Oil & Gas Co*., 608 S.W.3d 1, 12 (Tex. App.—Dallas 2018), *aff'd*, 619 S.W.3d 699 (Tex. 2021). "The rationale underlying this rule is that no judgment can affect subsequently arising rights and duties." *Marino v. State Farm Fire & Cas. Ins. Co*., 787 S.W.2d 948, 950 (Tex. 1990).

Although Sharon did file a motion for new trial in the State Court Action, seeking an order vacating the summary judgment and allowing her to litigate her rights in light of the subsequent French Judgment, that motion was overruled by operation of law. (Dkt. 14-1, Exh. B, ¶ 15 (R.APP_76)). Roger argues that Sharon "could have, should have, and did indeed litigate her claims based on the French Judgement in the State Court Action and the State Court Appeal." (Dkt. 14, p. 22). But to the contrary, Sharon was ***prevented*** from bringing any claims against Roger based on the effect of the French Judgment because her motion for new trial was denied.

Res judicata does not apply where a party is not permitted to raise the claims at issue in the prior proceeding. In *Nilsen v. City of Moss Point, Mississippi*, 674 F.2d 379, 385-86 (5th Cir. 1982), for example, the Fifth Circuit held that a plaintiff "cannot be barred on the theory that she should have brought her [current] claim in [the prior litigation] when she attempted to do so, and leave to amend was denied." *Id*. at 385-86. "[I]t would be unduly harsh" to apply res judicata to the plaintiff who was not permitted to bring an additional claim in the prior proceeding when she tried to do so. *Id*.

Similarly, the court held res judicata was not applicable in *Friends of Lydia Ann Channel v. Lydia Ann Channel Moorings, LLC*, No. 2:19-CV-00148, 2020 WL 1434706, at *9 (S.D. Tex. Mar. 24, 2020), because the plaintiff had moved for leave to amend its complaint in the prior case to add a public nuisance claim, and the Court denied leave. "Given these circumstances, the Court does not bar the public nuisance claim by res judicata. Because Plaintiff was not permitted to bring its additional claim in the prior proceeding, fairness would dictate that Plaintiff be given a chance to plead its case in court, even if Plaintiff's public nuisance claim does satisfy res judicata's four factors." *Id.*

The result should be the same here. Because the state court denied Sharon's motion for new trial based on the entry of the French Judgment, she could not have asserted her present claim to the Funds in that proceeding, and res judicata is inapplicable.

**E.    Roger Cannot Usurp the Value of CGIFSI, Which Is Community Property.**

Roger's final argument relies on a mischaracterization of the French Judgment and should be quickly rejected. Roger argues that the French Divorce Court only awarded Sharon "an interest in the value of Roger's shares in CGIFSI, not CGIFSI itself." (Dkt. 14, p. 22). The French Court actually held, however, that "the ***value of the company*** is presumed to be

common" and, because Roger failed to rebut that presumption, "It follows that ***the value of CGIFSI*** is common property." (Dkt. 14-1, Exh. A-5, R.APP_57; Exh. 2, S.APP_23-24, ¶ 9) (stating that French Judgement did not make any distinction between "stock value," "cash value," or "total value."). Under California community property law, "[e]ach spouse owns a one-half interest in all community property." *In re: Marriage of Benson*, 36 Cal. 4th 1096 (Cal. 2005) (citing Cal. Fam. Code §751).

The French Court distinguished between Roger's right to make decisions for the company as the record shareholder and Sharon's right to the value of the company, explaining that one fact does not affect the other. (Dkt. 14-1, Exh. A-5, R.APP_56-57). But as discussed in Section C above, Roger's position as shareholder does not give him the right to destroy the value of the community asset by diverting $2.4 million in cash (essentially the company's only asset) to his personal offshore bank account. CGIFSI is not an operating entity. (Exh. 2, S.APP_24, ¶ 11). It is merely a holding account for distributions and royalties. (*Id*.). There are no employees, no rent, no utilities, and no payroll. (Id.). Therefore, there are no legitimate business needs to transfer the $2.4 million out of the CGIFSI account. (*Id*.).

Contrary to Roger's claim in his summary judgment motion, the French Court did not consider or reject a request by Sharon to "divide CGIFSI's assets" or to "direct the flow of funds from the Account." (Dkt. 14, p. 23-24). In the cited passage, the French Court denied Sharon's request that Roger be ordered to ***return*** $3.5 million previously withdrawn from CGIFSI, but that was based on the Court's conclusion that Sharon had failed to prove (1) those withdrawals were for the benefit of Roger and (2) they had the effect of reducing the value of the company. (Dkt. 14-1, Exh. A-5, R.APP_62). Such a ruling, based on a lack of evidence

regarding past transactions, cannot be read to give Roger carte blanche to move the rest of the Funds to his personal offshore bank account and, thereby, destroy the value of the company.

Allowing Roger to withdraw $2.4 million from CGIFSI would necessarily decrease the value of the company, since under California law the value of the company consists of all of its assets, including the cash held in its bank accounts. (Exh. 2, S.APP_24, ¶ 10). If Roger is allowed to take these monies for his personal benefit and use, then by default, the company loses value because the money does not belong to CGIFSI anymore. (*Id.*). At the very least, whether Roger's proposed withdrawal would benefit him and/or reduce the value of the company are fact questions that have not been determined and that, therefore, preclude summary judgment.

## CONCLUSION AND PRAYER

Roger and CGIFSI fall far short of meeting their summary judgment burden or establishing "beyond peradventure" that they are entitled to the disputed funds. Given Roger's history of delay, secreting community assets, and frustrating the equitable division of community property in the French Divorce Court, this Court should exercise its equitable powers to deny summary judgment and protect the disputed funds until the division of property in France can be completed.

WHEREFORE, Sharon MacDonell respectfully requests that the Court DENY Roger and CGIFSI's Motion for Summary Judgment and GRANT her such other relief to which she is entitled.

Dated:  June 1, 2021

Respectfully submitted,


_____
        */s/ Kelli M. Hinson*
**KELLI M. HINSON**
  Texas State Bar No. 00793956
  Email:  khinson@ccsb.com
**SVEN STRICKER**
  Texas State Bar No. 24110418
  Email:  sstricker@ccsb.com
**CARRINGTON, COLEMAN, SLOMAN
  & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, Texas 75202-3767
214/855-3000 (phone)
214/580-2641 (fax)

***Attorneys for Defendant
Sharon MacDonell***